<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:  CHRISTOPHER D. REID
    and LAUREN CARTY REID,                  Chapter 7

                                                      Case No. 08-18155 (RTL)

                            Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
MARTIN FFRENCH,

                                                      Adversary Proceeding
                    Plaintiff,             Case No.  08-2159 (RTL)
       v.

CHRISTOPHER D. REID,
    and LAUREN CARTY REID,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**<u>OPINION</u>**

**APPEARANCES:**

ABILHEIRA & ASSOCIATES, P.C.
Elias Abilheira, Esq.
Attorneys for Plaintiff

Matthew A. Wallace, Esq.
Attorney for Defendants/Debtors

**<u>RAYMOND T. LYONS, U.S.B.J.</u>**

**<u>INTRODUCTION</u>**

      Lauren Carty Reid embezzled funds from Carty Ffrench Development, LLC, a company

she co-owned with the Plaintiff.  Her debt is nondischargeable under 11 U.S.C. § 523(a)(4).  The

Plaintiff failed to establish that the debt should be nondischargeable as to Lauren's husband,

Christopher Reid. Although company funds were paid to Christopher Reid, he proved that he gave approximately the same amount back to the company.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising in or related to a case under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) (proceedings to determine dischargeability).

## PROCEDURAL HISTORY

Christopher Reid and Lauren Carty Reid ("Defendants") filed for chapter 13 bankruptcy protection on May 1, 2008, as joint debtors. The Defendants listed Martin Ffrench as a non-priority unsecured creditor on their Schedule F, referencing a suit in state court and listing the claim value as $0.00. On June 12, 2008, Mr. Ffrench filed a proof of claim in the Defendants' bankruptcy case in the amount of $150,000.00 for "misappropriations" in connection with a business venture with Lauren Carty Reid. On July 1, 2008, the Defendants' case was converted to chapter 7. On August 26, 2008, the present adversary proceeding was commenced by Mr. Ffrench seeking an order determining the nondischargeability of the $150,000.00 debt.

Two other creditors in this case filed adversary complaints seeking determinations that their claims were nondischargeable under Section 523 of the Bankruptcy Code.[1] The trials were scheduled to commence on the same date because the three adversary proceedings involved the

---

[1] A judge may take judicial notice of the docket in the debtor's bankruptcy case and prior decisions in the case. *See, e.g., In re Edwards*, 228 B.R. 552, 554 n.1 (Bankr. E.D. Pa. 1998).

same defendants and common facts were at issue. The trials were delayed pending the outcome of related criminal charges brought against the debtors.[2]

Lauren Carty Reid's mother, Marie Carty, owned a property management company that provided services to Wellington Place Condominium Associates. Among those services, the management company collected monthly fees from homeowners and paid the expenses. Lauren worked for her mother's company and operated on site at Wellington Place, dealing with maintenance personnel, subcontractors and homeowners. Lauren's company, Carty Ffrench Development, LLC, described below, was hired by Wellington Place to perform repairs. The financial records were in shambles. There were multiple bank accounts, numerous cash transactions, payments for goods and services that were not condominium expenses (e.g., women's apparel), bounced checks, and insurance cancellations. These irregularities were reported to the authorities, leading to indictments and guilty pleas by Lauren and her mother. Under questioning by the state court judge, Lauren admitted to diverting money from Wellington Place for the benefit of herself and others.

After Lauren Carty Reid pled guilty to a second degree offense of misappropriation of entrusted property and a third degree offense of failure to file tax returns, but before she was sentenced in state court, trial commenced in this court. In the first adversary proceeding, 08-02506-RTL, the court entered judgment in favor of Wellington Place Condominium Association and against Lauren Carty Reid, finding her debt nondischargeable under Section 523(a)(4) as having been incurred through fraud or defalcation while acting in a fiduciary capacity and through embezzlement. Ms. Carty Reid worked as a manager of the association and admitted

---

[2] "The record of a related state case is a proper object of judicial notice." *Munoz v. City of Philadelphia*, 346 Fed. Appx. 766, 771 n.11 (3d Cir. Sept. 24, 2009) (citation omitted).

misappropriating funds. A motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure[3] was granted finding no cause against Christopher Reid in the Wellington Place Condominium Association adversary proceeding. No evidence was presented of his involvement in his wife's wrongdoing against the association.

As previously mentioned, Lauren Carty Reid also formed her own construction business with Martin Ffrench called Carty Ffrench Development, LLC ("Carty-Ffrench"). She handled the finances and administration. Mr. Ffrench worked in the field performing construction and supervising the employees and subcontractors.

Frank and Gail Reimers, Lauren's cousins, were among the customers of Carty-Ffrench. The Reimers told Lauren they wanted to renovate their kitchen and agreed to engage Carty-Ffrench to do the work. Lauren induced her cousins to write three checks over several months totaling $31,000.00, ostensibly to prepay for custom cabinets and other items. However, the cabinets were never ordered, no materials were delivered to the site, and no work whatsoever was done on the Reimers's residence. It appears that Lauren Carty Reid diverted the money for her own use.

In the second matter, 08-02528-RTL, judgment was entered in favor of Frank and Gail Reimers and against Lauren Carty Reid, finding their debt nondischargeable as incurred by fraud under Section 523(a)(2)(A). Ms. Carty Reid induced the Reimers to enter a construction contract with Carty-Ffrench for home improvements that she never intended to perform. Ms. Carty Reid converted all monies paid by the Reimers to her own use and no work was ever done on their house. A judgment on partial findings under Rule 52(c) of the Federal Rules of Civil

---

[3] Incorporated into the Bankruptcy Code by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

4

Procedure was entered in favor of Christopher Reid because no evidence was offered against him.

In this third adversary proceeding, the Plaintiff, Martin Ffrench, seeks a determination that his claims against Lauren Carty Reid and Christopher Reid are nondischargeable under Section 523(a)(4), "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

## **FINDINGS OF FACT**

In or around June 2005, the Plaintiff, a carpenter, and Lauren Carty Reid, formed a limited liability contracting company, Carty Ffrench Development, LLC ("Carty-Ffrench"), whereby the Plaintiff was to perform all of the actual construction and job site work, while Ms. Carty Reid would draw up new contracts and estimates, perform the accounts receivable and accounts payable duties, and generally handle all the paperwork. Ms. Carty Reid held herself out as an experienced administrator. She was then working as the office manager of Wellington Place, a condominium association. The Plaintiff became concerned about the company's finances when attempting to file his 2005 tax returns in January or February of 2006. The Plaintiff repeatedly requested the paperwork from Ms. Carty Reid but she continuously put him off. Four to five months later the Plaintiff discovered the identity of Carty-Ffrench's accountant and contacted him directly. The accountant informed the Plaintiff that he received a bag of receipts from Christopher Reid just days earlier. Around the same time, the Plaintiff began learning of bounced checks and began receiving calls from subcontractors complaining of non-payment and unsatisfied clients. Toward the end of 2006, Carty-Ffrench was dissolved and the

5

Plaintiff sought legal representation. He and his wife refinanced their residence to pay off several of the Carty-Ffrench debts.

During the course of this adversary proceeding, Plaintiff presented evidence of various suspicious transactions effectuated by Lauren Carty Reid. This evidence was largely unrefuted. The explanations Ms. Carty Reid did provide were unsupported by any evidence and lacked credibility.

Three bank accounts were opened by Ms. Carty Reid unbeknownst to the Plaintiff. Money was moved around between the accounts and many checks were returned as unpaid. On the stand, Lauren Carty Reid confirmed that checks totaling approximately $51,000.00 were written from the Carty-Ffrench bank accounts to her and cashed by her. Additionally, checks were made payable to Christopher Reid, Marie Carty (Lauren's mother) and Henry Hammond (Lauren's father). Another $8,600.00 in checks made payable to cash were endorsed and cashed by Lauren Carty Reid. There was $22,000.00 - $35,000.00 withdrawn from the Carty-Ffrench account via automatic teller machines ("ATM"). Payments were made from the Carty-Ffrench accounts to clothing and retail vendors including Amazon, Annie Sez, Bloomingdales, Coach, The Limited, Saks Fifth Avenue, Target, Bombay, Neiman Marcus, Banana Republic, Old Navy, Victoria's Secret and Macy's. Payments were made to a non-corporate American Express account and to Mercedes-Benz Financial. Payments were also made from the Carty-Ffrench bank accounts to a medical insurance plan that the Plaintiff was never apprised of. Other suspicious payments were made, including to the U.S. Department of Education, Comcast Cable, Wellington Place Condominium Association and Lexus Financial.

6

Two credit cards were opened up in the name of Carty-Ffrench unbeknownst to the Plaintiff. Some of the charges on the cards appear to be legitimate business expenses, while others, such as charges to Nordstrom's, appear to be unrelated to the business of Carty-Ffrench. The bills were sent to a post office box that the Plaintiff had no knowledge of or access to.

Plaintiff attempted to establish that Christopher Reid also misappropriated funds from Carty-Ffrench by presenting checks written to Christopher and drawn on Carty-Ffrench's various bank accounts, checks made out to "cash" that were cashed by Christopher Reid, and checks and electronic transfers payable to third parties for the benefit of Christopher Reid. The Plaintiff presented evidence of checks totaling $22,975.00 made payable to Christopher Reid, $3,750.00 worth of checks made payable to "cash" and cashed by Christopher Reid, and $63,567.27 worth of checks or transfers for the benefit of Christopher Reid. This equals an amount of misdirected funds in excess of $90,000.00. After close scrutiny it was revealed that some of these checks or transfers were ultimately returned and credited back to the accounts. Below is a breakdown of the non-returned checks and transfers involving Christopher Reid.

| BANK | CHECKS TO C.R. | CHECKS TO CASH CASHED BY C.R. | PMTS TO THIRD PARTIES FBO C.R. | TOTAL |
|---|---|---|---|---|
| Bank of America | $ 6,645.00[4] | $3,750.00 | $19,463.60[5] | $29,858.60 |
| Sovereign Bank | $ 5,000.00[6] | | $22,952.38 | $27,952.38 |
| Sun Bank | $ 1,000.00 | | | $ 1,000.00 |
| Valley National | $   830.00 | | | $   830.00 |

---

[4] A check for $5,000.00 made payable to Christopher Reid was returned for insufficient funds.

[5] One check for $4,000.00 was made payable to American Express, allegedly to Christopher Reid's American Express account, but was later returned. Two additional electronic checks made payable to Christopher Reid's American Express account in the amounts of $2,500.00 and $12,282.33 were also returned and are not included in the total. Also, two electronic payments to Christopher Reid's First Energy account in the amounts of $156.61 each were returned, and three payments to Mercedes-Benz Financial in the amounts of $686.88, $686.88 and $681.98 were returned. Christopher Reid submits that an additional payment made to Mercedes-Benz for $681.98 was returned but there is no evidence to support this as it does not appear on the bank statements submitted by either party, thus it has not been deducted from the figure.

[6] A check for $4,500.00 appears in the bank's register of canceled checks but does not appear on the bank statements as a debit from the account. Christopher Reid testified that the check did not clear. Due to a lack of evidence presented by the Plaintiff, the court accepts Christopher's testimony.

7

**TOTAL**                                                                                              **$59,640.98**

There are several payments to one or more American Express accounts that were not adequately identified as belonging to Christopher Reid.  These consist of non-electronic checks made payable to American Express totaling $6,166.68 (actually paid) from the Carty-Ffrench Bank of America account, electronic checks totaling $13,001.93 from the Carty-Ffrench Sovereign Bank account, and a Sovereign bank check for $7,939.72.  Additionally, the court accepts Christopher Reid's argument that the payments to Mercedes-Benz Financial ($6,079.39 actually paid from Bank of America and $2,010.73 from Sovereign Bank) were not for his benefit, but for Lauren's.  Even though the Mercedes was leased in Christopher Reid's name, it was primarily Lauren's car.  Finally, a $250.00 check made payable to Christopher Reid from Sun Bank was reimbursement from Carty-Ffrench for Christopher's advancing of funds to participate in a golf outing.   After the subtraction of these contested charges, the total misappropriated funds that went to benefit Christopher directly is approximately $24,192.53.

Mr. Reid attempted to prove that the money he received from Carty-Ffrench represented partial repayment of loans he made to the company totaling at least $31,709.80.[7]  He entered into evidence a breakdown of the money he loaned to Carty-Ffrench and compared it with the payments made to him and his American Express account.  During the company's first job, in 2005, Mr. Reid paid two vendors for expenses he speculated Carty-Ffrench did not have the money to cover.  These expenses were paid for on Christopher Reid's American Express card and totaled $12,176.61.  As for the remaining $19,533.19, at least four checks, representing $5,660.00, made out to "cash," were not corroborated by Carty-Ffrench's bank statements and

---

[7]There was a typo on Mr. Reid's summary, resulting in a $2.00 overage.  He actually claimed to loan $31,711.80.

8

Case 08-02159-RTL    Doc 23    Filed 08/03/10    Entered 08/04/10 14:12:11    Desc Main
Document      Page 9 of 14

were memorialized only in a receipt written by Lauren to Chris on Carty-Ffrench stationary. The court declines to accept these receipts as evidence that the loans were made. Of the $9,490.00 in cash that Christopher claims he loaned to Carty-Ffrench, two cash items totaling $5,400.00 correspond with deposits made into the Carty-Ffrench bank accounts. The court accepts this as sufficient evidence of a loan. This leaves $4,090.00 backed only by Lauren's receipts and not accepted by the court. Christopher Reid provided sufficient documentation to prove that he made a $900.00 wire transfer from his Morgan Stanley account into a Carty-Ffrench bank account. The remaining $3,483.19 also appears to be supported by sufficient documentation. In sum, the court accepts that Christopher Reid loaned Carty-Ffrench $21,959.80. Taking the amount that the Plaintiff has proved was paid from Carty-Ffrench to or for the benefit of Christopher Reid ($24,192.53) and deducting the amount Christopher has proved he paid to or for the benefit of Carty-Ffrench ($21,959.80) yields a difference of $2,232.73. Therefore, the total amount of unexplained, allegedly misappropriated funds that went directly to benefit Christopher Reid becomes $2,232.73.

## DISCUSSION

*Nondischargeability Under Section 523(a)(4)*

Section 523(a)(4) provides three grounds for nondischargeability of a debt.[8] The first is "for fraud or defalcation while acting in a fiduciary capacity," the second is for "embezzlement," and the third, for "larceny." 11 U.S.C. § 523(a)(4). Count One of the Plaintiff's complaint attempts to revive a state court action for embezzlement of funds by Lauren Carty Reid and

---

[8] "The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny.' The import of the grammatical structure is that the discharge exception applies even when the embezzlement or larceny was committed by someone not acting as a fiduciary." 4 COLLIER ON BANKRUPTCY ¶ 523.10 (Alan N. Resnick & Henry J. Sommer 2010) (citing to the legislative history).

Christopher Reid from Carty-Ffrench in the amount of $200,000.00.  Count Two appears to allege defalcation while acting in a fiduciary capacity.  Here the Plaintiff details the misappropriations and also alleges that Lauren Carty Reid owed a fiduciary duty to the Plaintiff in collecting the payments and monies that came into the business and distributing the monies appropriately.  Count Three alleges that Lauren Carty Reid committed fraud while acting as a fiduciary.

The party objecting to discharge bears the burden of proof on this issue.  FED. R. BANKR. P. 4005; *Meridan Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992).  Exceptions to discharge are construed against creditors and in favor of debtors.  *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir. 2002).  "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### *Lauren Carty Reid*

Based on the evidence presented, the court finds that Lauren Carty Reid embezzled funds from Carty-Ffrench.  "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Schlessinger v. Schlessinger (In re Schlessinger)*, 208 Fed. Appx. 131, 133 (3d Cir. 2006) (citing *Moore v. United States*, 160 U.S. 268 (1895)).  The ATM withdrawals, checks made payable to cash, and payments to retail stores clearly unrelated to the business, have not been adequately explained or explained at all.  Lauren Carty Reid was entrusted with the company's accounts; she was educated and an experienced bookkeeper, yet she kept almost no business records and no accountings.  She employed unorthodox and undocumented business practices to pay employees

10

and vendors. The evidence presented by the Plaintiff and the inability of the Defendant to refute or explain the evidence, leads the court to conclude that the Plaintiff has met his burden and the Plaintiff's claim against Lauren Carty Reid is non-dischargeable pursuant to 11 U.S.C. § 524(a)(4).

*Christopher Reid*

The complaint has three counts but only the first and second counts are directed at Christopher Reid. The First Count alleges, without particularity, that both defendants embezzled and misappropriated money from the company. The Second Count recites a series of payments made by Lauren Carty Reid from Carty-Ffrench to or for the benefit of Christopher Reid and that he "received these fraudulent monies from his wife." Both counts seek a determination that the alleged debt due from Christopher Reid be determined nondischargeable under Section 523(a)(4) of the Bankruptcy Code as embezzlement or fraud while acting in a fiduciary capacity. Plaintiff's trial brief also argues that Christopher is liable because "Christopher Reid was the beneficiary and recipient of significant funds misappropriated from the company." Since Christopher had no status with the company or the Plaintiff, the court will consider whether there is sufficient proof that Christopher embezzled from Carty-Ffrench.

Christopher was not an authorized signer on any of the company's bank accounts or credit cards. He exercised no control over company assets. The only proof presented against Christopher were the checks paid to him or cashed by him and payments to his credit card. The court has determined that of the more than $90,000.00 Plaintiff alleges was transferred from the company to Christopher, only approximately $24,000.00 was actually paid to him or for his benefit. In defense, Christopher argued that he advanced to the company more than was paid to

11

him, so that on a net basis the company owes money to him, not vice versa.  After scrutinizing Christopher's evidece and disregarding receipts signed by his wife, the court concludes that Christopher advanced at least approximately $22,000.00; so that the net amount plaintiff has proved went to Christopher was at most $2,000.00.  This is a de minimus amount.  Had Lauren kept better records, the court suspects that Christopher would have been able to demonstrate that he indeed advanced more to the company than he got back.  Plaintiff's attempt to prove Christopher's liability based upon the company's payments to him or for his benefit fails to satisfy the burden of proof for nondischargeability.

*Conspiracy*

In his closing argument, Plaintiff's attorney argued that Christopher conspired with Lauren to embezzle money from Carty-Ffrench.  Disregarding for the moment that conspiracy was never plead, the proofs presented have not established that Christopher conspired to embezzle money.

An exception to discharge may exist based on debts arising from the unlawful acts of a co-conspirator.  *The Aetna Casualty and Surety Co. v. Markarian (In re Markarian)*, 228 B.R. 34, 39-40 (1st Cir. B.A.P. 1998) (surveying relevant cases).  "In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'"  *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (citation omitted). Likewise, the Third Circuit has recognized a four part test for the tort of civil conspiracy: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common

design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 99 A.2d 849, 855 (N.J. 1953)). The court applies New Jersey law in the absence of federal law governing conspiracy in bankruptcy cases. *See Alonso v. McAllister Towing of Charleston, Inc.*, 595 F. Supp. 2d 645, 651-52 (D.S.C. 2009) (applying South Carolina civil conspiracy law to admiralty case because no federal law governing civil conspiracy in admiralty cases exists, no prejudice would result to either party, and its application would not threaten uniformity).

In another New Jersey bankruptcy case, creditors of a wrongdoer-wife filed an adversary proceeding in the husband's bankruptcy case seeking nondischargeability of a debt incurred by his wife. *Rios v. Shafer (In re Shafer)*, 2010 WL 1286427, at *1-2 (Bankr. D.N.J. Mar. 31, 2010). In *Rios*, the debtor's wife was an attorney who employed the plaintiff-wife and who also represented the plaintiffs in the sale of their house and the purchase of another house. *Id.* The debtor's wife misappropriated the plaintiffs' funds held in her client trust account. *Id* at *2. The debtor worked for his wife in a limited capacity such as running errands and depositing checks. *Id.* In particular, he cashed a check for his wife made payable to "cash," representing funds that were later used to reinstate a mortgage on a home owned by the debtor's brother-in-law, previously owned by the debtor and his wife, and in which he and his wife were living. *Id.* It was undisputed that the funds belonged to the plaintiffs. *Id.* at *9. The court found the debt was dischargeable. *Id.* at *11. With respect to the embezzlement claim, the court found the debtor not liable because no evidence was presented that the debtor had misappropriated the funds for his own use – he was simply told by his wife to cash a check which she then used the funds for

her own unlawful purposes. *Id* at *10. Because the couple was divorcing, the debtor claims to have not cared what his wife was doing with her money and to have not paid attention. *Id.* at *2.

Similarly, in the case at hand, the Plaintiff has not proven a *prima facie* case for civil conspiracy, mainly for lack of establishing that an express or implied agreement existed between Christopher and Lauren to unlawfully divert funds from Carty-Ffrench. The Plaintiff attempts to prove an agreement existed based solely on Christopher Reid's alleged receipt of diverted funds. However, the evidence presented by the parties shows the maximum amount Christopher Reid benefitted from funds diverted from Carty-Ffrench is a little over $2,000.00. This alone does not constitute a preponderance of the evidence and therefore the Plaintiff did not satisfy his burden of proving that Christopher Reid conspired with his wife to embezzle from Carty-Ffrench.

## **CONCLUSION**

Lauren Carty Reid embezzled funds from Carty-Ffrench, LLC for personal use. Therefore, the claim of her partner, Martin Ffrench, is not discharged in bankruptcy pursuant to Section 523(a)(4) of the Bankruptcy Code. Plaintiff has failed to meet his burden of proving that Christopher Reid embezzled anything. The Plaintiff's claim is discharged insofar as it pertains to Christopher Reid.

**Dated: Aug. 3, 2010**                                                         _____/s/ *Raymond T. Lyons*_____
                                                                                                        **United States Bankruptcy Judge**